# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

SEQUOIA FORESTKEEPER,

           Plaintiff,

    v.

TERESA BENSON, *et al.*,

           Defendants

No.: 1:14−CV−00341−LJO−SKO

**MEMORANDUM DECISION AND ORDER RE MOTION TO DISMISS (DOC. 23) AND MOTION TO STRIKE (DOC. 33)**

## I. <u>INTRODUCTION</u>

Plaintiff challenges the United States Forest Service's ("Forest Service" or "USFS") Decision Notice and Finding of No Significant Impact ("Decision Notice") for the Hume Roadside and Recreation Site Hazard Tree Project ("Hume Hazard Tree Project" or "Project") in the Giant Sequoia National Monument ("the Monument") under the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321 *et seq.*, and the National Forest Management Act ("NFMA"), 1600 U.S.C. §§ 1600 *et seq.* Plaintiff also alleges that the Forest Service violated the Presidential Proclamation that established the Monument, 65 Fed. Reg. 24,095, 24,097 (Apr. 25, 2000), when it issued the Monument Management Plan because the Forest Service improperly authorized tree removal under the Proclamation's "clearly needed" standard. In its Complaint, Plaintiff requested (1) a declaration that the Hume Hazard Tree Project violates NFMA, NEPA, and the Monument Plan, (2) an injunction against the sale and removal any of the hazard trees from the Project Area and the Monument, (3) a declaration that the Monument Plan's tree removal criteria violates the Monument Proclamation, (4) vacatur of the Monument Plan's tree removal criteria, and (5) remand of the Monument Plan decision back to the Agency. The USFS rescinded authorization for the sale and removal of hazard trees on June 4, 2014 and moved to dismiss the case shortly thereafter. Defs.' Mtn. to Dismiss (hereinafter "Defs.' Mem.") (Doc. No. 23);

1

Declaration of Teresa Benson, District Ranger for the Hume lake Ranger District of the Sequoia National Forest and the Giant Sequoia National Monument (Doc. Nos. 23-1 through 23-3).

## II. BACKGROUND OF THE CASE

In September 2013, the Forest Service issued the Decision Notice authorizing the implementation of the Hume Hazard Tree Project, and adopting Alternative D from the Project's Final Environmental Assessment ("EA"). Doc. No. 11-11. Alternative D proposed the felling of hazard trees along 58 miles of roads and within eleven developed campgrounds and residential areas in the Hume Lake Ranger District of the Sequoia National Forest and the Monument. *Id.* As described in the EA, hazard trees are dead or damaged trees that are susceptible to falling onto roadways and recreation sites, and are therefore deemed hazardous to people. Doc. No. 11-6. Alternative D also proposed the sale and removal 2000 of CCF (centum cubic feet, equivalent to 100 cubic feet) of wood as logs over the next two years. *Id.* The USFS also considered Alternative C, which called for felling the same number of trees as under Alternative D; but not for the sale or removal of the trees from the Project area. Plaintiff appealed the Decision Notice to the USFS in November 2013. *Id.* In January 2014, the USFS affirmed the District Ranger's rationale and decision to implement Alternative D. Doc. No. 11-13. On March 1, 2014, the USFS announced that it would accept sealed bids for the timber sale. Doc. No. 11-14.

Plaintiff filed its Complaint on March 7, 2014 and on March 16 moved for a preliminary injunction ("PI") halting the sale and removal of trees from the Project Area. Doc. No. 10-1. Plaintiff alleges, first, that the Forest Service's authorization of the Project is inconsistent with the Monument Management Plan's requirement not to remove trees from the project area unnecessarily, and that this inconsistency violates NFMA's requirement that the Forest Service actions "shall be consistent" with land management plans. Compl. at ¶ 77 (quoting 16 U.S.C. § 1604(i)). Plaintiff's second cause of action alleges the authorization also violates NEPA because it failed to disclose how it will determine whether tree removal can be justified and failed to analyze available hazard tree data. Compl. ¶¶ 82-84 (quoting 40 C.F.R. §§ 1500.1(b) & 1502.24)). Plaintiff's third claim alleges that the Monument Management Plan

2

itself is flawed because the "vague and unenforceable" criteria it outlines for the removal of trees is inconsistent with the proclamation establishing the Monument. Compl. ¶¶ 87-88. Plaintiff brings all claims under the Administrative Procedure Act, 5 U.S.C. § 706(2), on the basis that the Forest Service's approval of the Project and the Management Plan are final agency actions that are "arbitrary, capricious, and otherwise not in accordance with law, or without observance of procedures required by law." Compl. ¶¶ 80, 85, & 89.

The Forest Service received no bids for the proposed timber sale. Doc. No. 17. On April 3, 2014 Plaintiff withdrew its PI subject to a stipulation in which parties agreed that the USFS could use its own contractors and employees to fell hazard trees, but would not sell the trees or remove them from the Project Area unless this case is resolved in the Forest Service's favor. *Id.* at ¶ 2.

On June 4, 2014, Defendant USFS District Ranger Teresa Benson issued a decision to withdraw authorization of the decision to sell and remove trees from the Project Area by striking the sentence authorizing this sale from the Decision Notice. Doc. No. 23-2 (hereinafter "Withdrawal Notice"). In an accompanying document, Benson explained that it was not economically feasible to use a timber sale for the removal of trees the USFS felled pursuant to its stipulation. Doc. No. 23-3 (hereinafter "Withdrawal Memo"). Because the USFS had considered this situation under Alternative C in the EA, Benson concluded that she did not need to supplement or revise the EA to accommodate the change in position. *Id.* Neither document altered the Forest Service's approval of Alternative D as the preferred alternative. The Withdrawal Memo states that the "analysis and conclusions in the original Environmental Assessment are still valid." *Id.*

On June 9, 2014, Defendants moved to dismiss the case pursuant to Federal Rule of Civil Procedure 12(b)(1) on the basis that Benson's withdrawal of the approval to sell and remove trees from the project area mooted Plaintiff's claims. Defs.' Mem. at 1. On July 29, 2014, Defendants filed a motion to strike certain paragraphs from Plaintiff's declarations filed in support of its Opposition to Defendants Motion to Dismiss. Doc. No. 33.

3

### III. STANDARD OF DECISION

A motion to dismiss for lack of subject matter jurisdiction determines whether the plaintiff has a right to be in the particular federal court, whereas a motion to dismiss for failure to state a claim adjudicates whether a cognizable legal claim has been stated. *Trustees of Screen Actors Guild–Producers Pension & Health Plans v. NYCA, Inc.*, 572 F.3d 771, 775 (9th Cir. 2009) (quoting 5B Wright & Miller, Federal Practice and Procedure § 1350 (3d ed. 2004)). A federal court is a court of limited jurisdiction, and may adjudicate only those cases authorized by the Constitution and by Congress. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). Faced with a Rule 12(b)(1) motion, a plaintiff bears the burden of proving the existence of the court's subject matter jurisdiction. *Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996). A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears. *Gen. Atomic Co. v. United Nuclear Corp.*, 655 F.2d 968, 968–69 (9th Cir. 1981). "A motion to dismiss for lack of subject matter jurisdiction may either attack the allegations of the complaint or may be made as a 'speaking motion' attacking the existence of subject matter jurisdiction in fact." *Thornhill Pub. Co., Inc. v. Gen. Tel. & Electronics Corp.*, 594 F.2d 730, 733 (9th Cir. 1979) (citing *Land v. Dollar*, 330 U.S. 731, 735 & n. 4 (1947)). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1038 (9th Cir. 2004). "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.* at 1039. "If the challenge to jurisdiction is a facial attack, i.e., the defendant contends that the allegations of jurisdiction contained in the complaint are insufficient on their face to demonstrate the existence of jurisdiction, the plaintiff is entitled to safeguards similar to those applicable when a Rule 12(b)(6) motion is made." *Cervantez v. Sullivan*, 719 F. Supp. 899, 903 (E.D. Cal. 1989), *rev'd on other grounds*, 963 F.2d 229 (9th Cir.1992). If the motion constitutes a factual attack, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the

4

merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Thornhill*, 594 F.2d at 733(internal citation and quotation omitted).

## IV. DISCUSSION

**A.   Whether Plaintiff's First Two Claims Are Moot**

**1.   Legal Background of Constitutional Mootness and Voluntary Cessation**

An issue is moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000). "If the parties cannot obtain any effective relief, any opinion about the legality of a challenged action is advisory. *Id.* "The question is not whether the precise relief sought at the time the application for an injunction was filed is still available. The question is whether there can be any effective relief." *Or. Natural Res. Council v. U.S. Bureau of Land Mgmt.*, 470 F.3d 818, 820 (9th Cir. 2006). Declaratory relief is properly available "only when the challenged government activity ... is not contingent, has not evaporated or disappeared, and, by its continuing and brooding presence, casts what may well be a substantial adverse effect on the interests of the petitioning parties." *Headwaters, Inc. v. Bureau of Land Mgmt., Medford Dist.,* 893 F.2d 1012, 1015 (9th Cir. 1989) (internal quotations marks omitted).

Courts have long recognized a "voluntary cessation exception" to mootness. *Rosemere Neighborhood Ass'n v. U.S. EPA*, 581 F.3d 1169, 1173 (9th Cir. 2009).[1] Under this doctrine, when a defendant's voluntary cessation of a challenged activity is the basis for mootness, it becomes the defendant's burden to demonstrate that "subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000).[2] "The heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting

---

[1] It is unclear if "voluntary cessation" is truly an "exception" to the constitutional analysis, or if it is simply an alternative framework for evaluating mootness, which shifts the burden of persuasion to the Defendant.

[2] Defendants characterize the analysis for voluntary cessation as two pronged, as described in *Los Angeles County v. Davis*, 440 U.S. 625, 631 (1979). However, the Supreme Court's more recent decision in *Laidlaw* collapsed the analysis to the standard described here. Courts in the Ninth Circuit follow this approach. *See, e.g., Rosemere* 581 F.3d at 1173.

mootness." *Id.* This is because "otherwise they would be free to 'return to (their) old ways' after the threat of a lawsuit had passed." *Armster v. U.S. Dist. Court for Cent. Dist. of California,* 806 F.2d 1347, 1359 (9th Cir. 1986) (quoting *Iron Arrow Honor Society v. Heckler,* 464 U.S. 67 (1983)).

Courts are more likely to find that voluntary cessation of a challenged activity moots a case where the defendant has recognized that its conduct was illegal. *Am. Cargo Transp., Inc. v. United States,* 625 F.3d 1176, 1180 (9th Cir. 2010) (finding claim moot where government defendant changed its policy such that it was consistent with plaintiff's claims for relief); *see also Forest Guardians v. U.S. Forest Serv.,* 329 F.3d 1089, 1095 (9th Cir. 2003) ("It is unreasonable to think that the Service would return to conduct it has admitted to this court is constitutionally deficient."). Courts have also found that claims are mooted when defendants have shown that they were addressing deficiencies in the procedures at issue. *N. Cascades Conservation Council v. Fed. Highway Admin.,* C11-0666JLR, 2011 WL 2976913 at *3 (W.D. Wash. July 21, 2011) ("[Defendants] have expressly represented to Plaintiffs and to the court that no future project to rebuild or repair the Suiattle River Road will move forward absent additional analysis and a new decision document."); *see also Wildwest Inst. v. Seesholtz,* CV-07-199-S-BLW, 2008 WL 3289486 at * 2 (D. Idaho Aug. 8, 2008) ("Because the very issues raised by Wildwest in this lawsuit are being considered in the revision process, and could be resolved in Wildwest's favor, the Court's consideration of those issues now would be a waste of judicial resources and a mere advisory opinion.").

In contrast, courts have allowed claims to proceed when defendants cease an activity without admitting wrongdoing. *Am. Rivers, Inc. v. NOAA Fisheries,* CV-04-0061, 2004 WL 2075032 at *3 (D. Or. Sept. 14, 2004) ( ". . .NOAA Fisheries has not withdrawn the biological opinion challenged in this action. In addition, NOAA Fisheries has not indicated it intends to change its opinion, and BOR has not indicated it intends to change its operations significantly to the extent that a repeat of the challenged actions is highly unlikely.").

While courts grant presumptions of good faith to government agencies, they have also required

more than "bare assertions" when evaluating the likelihood of whether a defendant may "return to its old ways." *League of Wilderness Defenders v. Marquis-Brong*, 259 F. Supp. 2d 1115, 1121 (D. Or. 2003) ("[D]efendants' assertion that they have 'no intention of revisiting any type of forest treatment in the Timber Basin area' falls short of meeting their 'formidable burden of showing that it is absolutely clear the allegedly wrong behavior could not reasonably be expected to occur.'") (quoting *Laidlaw*, 528 U.S. at 189–90).

External circumstances can change such that it becomes "absolutely clear" that a defendant cannot resume a challenged activity. *Laidlaw*, 528 U.S. at 189. For example, a court in the Northern District of California found that the USFS made this showing when they presented evidence that a planned post-fire timber sale was no longer viable. *Forest Serv. Employees for Envtl. Ethics v. U.S. Forest Serv.* ("*FSEEE*"), 408 F. Supp. 2d 916, 918 (N.D. Cal. 2006). In that case, Defendants presented evidence that established that the sale would not be economically feasible if logging did not begin by a certain date. *Id.* at 919 (citing evidence that not meeting this date would result in "a very short window this next field season to harvest non-stained fire killed timber on this project" which "could result in a $600,000 to $800,000 reduction in stumpage receipts."). When the Forest Service recognized that the deadline would not be met, it withdrew the memorandum decision approving the sale. *Id.* at 918. Similarly, the Oregon Federal District Court found a case moot where lawsuit-related delays caused the USFS to conclude that a timber sale was no longer in compliance with the governing forest management plan. *League of Wilderness Defenders-Blue Mountains Biodiversity Project v. Smith* ("*Wilderness Defenders*"), 04-1595 PK, 2006 WL 3692535 at * 3 (D. Or. Dec. 12, 2006). Likewise, this Court found that a forest fire which burned 37,000 acres, coupled with the Forest Service's withdrawal of challenged Decision Notice and EA "establish[d] that the allegedly wrongful conduct . . .will not recur." *Sequoia ForestKeeper & Earth Island Inst. v. U.S. Forest Serv.*, CV F 07-1690 LJO DLB, 2008 WL 5054100 at *6 (E.D. Cal. Nov. 19, 2008).

    **2.**    <u>**Whether Plaintiff's First Two Claims are Constitutionally Moot**</u>

7

1    Defendants argue that Plaintiff's first and second claims are now moot because the USFS

2    withdrew its decision to sell and remove trees. Defs.' Mem. at 6. Plaintiff argues that this case is not

3    moot because the Defendants have not altered their decision to implement the "Tree Removal Criteria"

4    outlined in the Monument Management Plan. Opposition at 11, 14.[3] ("Moreover, while the Forest

5    Service may have removed its authorization to sell and remove trees from its current decision, it has not

6    changed or withdrawn its application of the removal criteria from the analysis."). Plaintiff further argues

7    that the Forest Service's mootness argument is based on its own decision to withdraw authorization for

8    the Project; and that there is a "reasonable expectation" that it will return to its plan to sell and remove

9    trees from the Project Area. *Id.* at 7. Defendant counters that it has satisfied the requirements of the

10   voluntary cessation doctrine because (a) there is no reasonable expectation that the wrong will be

11   repeated and (b) circumstances have changed that make a new sale unlikely. Defs.' Mem. at 7.

12       While Benson asserts that no timber sale is "currently anticipated," Doc No. 23-1 at ¶ 12, this

13   falls short of making it "absolutely clear" that one will not occur. The Court notes that the Forest Service

14   may have the regulatory authority to reinstate the timber sale without engaging in a public participation

15   process through the use of categorical exclusions or under the auspices of the original decision notice.

16   (36 C.F.R. 218.23(a), (e)). While the Forest Service promises to undergo a new decision-making process

17   "should any future decision . . .be pursued," this promise rings hollow in the absence of any admission

18   of wrongdoing by the USFS in its arguments or in Benson's declaration. In coming to this decision, this

19   Court finds it compelling that Defendants withdrew the timber sale authorization in a very narrow

20   manner. Doc. No. 23-2 (removing only following sentence from the decision notice: "An estimated

21   2,000 CCF of wood from trees felled along roadsides and in the organizational camps and campgrounds

22   would be removed as logs over the next two years."). Defendants left in place the finding that the

23   decision to sell and remove trees complies with NFMA and its approval of Alternative D under NEPA.

24

25   _____

26   [3] Plaintiff also argues that its NFMA claims are viable because Defendants allow wood to be removed from the Project Area
     for personal firewood use. Opposition at 11. Because this claim was not presented in the Complaint, the Court does not
     consider it adequately plead.

1   Doc. No. 11-11 at 13. ("In compliance with NFMA, Alternative D includes the removal of hazard trees

2   as logs to meet the purpose and need to maintain roads and recreation sites for safe public access.").[4]

3   Benson made clear this language was left in place, in part, because the "[t]he analysis and conclusions in

4   the original Environmental Assessment are still valid." Doc. No. 23-3. Thus, this Court cannot find that

5   Defendants meet the "heavy burden" of showing that it would be unreasonable to expect a future timber

6   sale to occur in the Project Area.

7        Defendants also argue that the Court should not hear the case because of "changed

8   circumstances" rendering any timber sale of hazard trees no longer viable, as was the case in *FSEEE* and

9   *Wilderness Defenders*. Defs.' Mem. at 8. Defendants, however, have not provided objective evidence

10  that the timber in the Project Area is rapidly depreciating in value, as the Forest Service did in those

11  cases. Rather, the "changed circumstance" in this case is that Defendants were unable to sell the timber

12  in the manner they anticipated. Defs.' Mem. at 8. ("Even if the Forest Service had not deleted the

13  portion of the Decision Notice authorizing the sale and removal of the trees, without a bidder to

14  purchase timber it would still be extremely unlikely that the challenged activities could reasonably be

15  expected to occur."). The Forest Service's failure in the marketplace is not comparable to situations

16  presented in *FSEEE* and *Wilderness Defenders* because it is reversible. In those cases, the timber

17  products were damaged by fire and rapidly decreased in value. Here, Defendants state that their original

18  bid proposal was unsuccessful because buyers would be responsible for removing too much heavy

19  material from roadside trees and felling trees that presented logistical challenges. Doc. 23-1 at ¶ 5.

20  However, Defendants' use of their own contractors to fell trees and collect them in disposal areas, Doc.

21  23-1 at ¶¶ 6-8, would seem to address these issues. Defendants' efforts to create circumstances that will

22  be more favorable to its plan to sell and remove timber from the Project Area put them in a different

23  position than defendants in *FSEEE* and *Wilderness Defenders* and make the prospect of such a sale more

24

25  ─────────────────────

26  [4] Defendants explained that they did not withdraw the *entire* Decision Notice because they rely on it for the authority to fell trees, as agreed to by parties in their stipulation. Defs.' Mem. at 3, fn. 2. However, Defendants do not argue that the language approving Alternative D is necessary for this work to continue.

reasonable to anticipate.

For all of these reasons, this Court finds that Plaintiff's first two claims meet the elements of the voluntary cessation doctrine and are not moot.

### 3.   **Prudential Mootness**

Defendants argue that even if the case is not constitutionally moot, this Court should not hear it because "no meaningful relief can be provided to Plaintiff." Defs.' Mem. at 9. The Ninth Circuit has made clear that it may be "legally sound" to dismiss cases as "prudentially moot" "if circumstances have changed since the beginning of litigation that forestall any occasion for meaningful relief." *Deutsche Bank Nat. Trust Co. v. F.D.I.C.*, 744 F.3d 1124, 1135 (9th Cir. 2014). In a case similar to this one, a court in the Northern District of California declined to hear a case that it found met the elements of the voluntary cessation doctrine because the plan originally at issue in the action was "abandoned long ago." *Envtl. Prot. Info. Ctr. v. U.S. Forest Serv.*, C-02-2708 JCS, 2006 WL 2130905 at *12 (N.D. Cal. July 28, 2006). In that case, defendants promised that they would not reissue the contested plan and that future decisions would comply with the land management plan. *Id.* The court found that the case "was not moot as a constitutional matter," but declined to hear the case because the only relief requested was "essentially a proposed injunction to comply with the law." *Id.* at *11-*12. In contrast, a Court in this district declined to dismiss a case for prudential reasons where federal defendants "volunteered to change their operations to a certain extent," but still relied on the contested decision-making document "in part." *Natural Res. Def. Council v. Norton*, 1:05CV01207 OWW LJO, 2007 WL 14283 *7 -*8 (E.D. Cal. Jan. 3, 2007) ("The controversy over whether the BiOps and OCAP should have continued viability is real and substantial and this court could provide relief, in the form of a decision invalidating the BiOps followed by hearings on interim remedies.").

This Court declines to modify its previously articulated position that a case should not be dismissed for mootness if a challenged action is likely to occur again under the cover of new paperwork. *Sequoia Forestkeeper & Earth Island Inst. v. U.S. Forest Serv.*, CV F 07-1690 LJO-DLB, 2008 WL

2131557 *3 (E.D. Cal. May 21, 2008) ("[A]n action is not moot where the government states that the challenged action will probably happen again next year with a "similar environmental assessment" and "pretty much the same management plan."). Defendants decided to withdraw the authorization to sell and remove timber from the Project Area, while leaving the NEPA framework for these actions intact. The EA may continue to be relied upon by Defendants and is a "continuing and brooding presence" that looms over Plaintiff's contrary interests. *Headwaters, Inc.*, 893 F.2d at 1015. Declaratory or injunctive relief would be appropriate because it would be tailored to these live issues.

For all of the reasons described above, this Court DENIES Defendants' Motion to Dismiss Plaintiff's First and Second Claims for Relief.

**B.**     <u>Whether Plaintiff's Third Claim Should Be Dismissed</u>

Plaintiff's Third Claim for Relief alleges that the Monument Management Plain itself violates NFMA because the tree removal criteria it approves is contrary to the requirements of the proclamation establishing the monument. Compl. ¶ 87. Defendants argue that this claim should be dismissed because (a) Plaintiff lacks standing to challenge the Management Plan and (b) the Management Plan is not ripe for review. Defs.' Mem. at 11-12.

    **1.**     <u>Whether Plaintiff Has Standing</u>

Defendants argue that Plaintiff does not suffer from a "concrete and particularized injury" caused by the Management Plan itself, and therefore lacks standing to challenge it. Defs.' Mem. at 11. Defendants cite to *Summers v. Earth Island Ins.*, 555 U.S. 488 (2009), for the proposition that regulations generally need to be applied to a particular project before they can "imminently" harm a standing witness. *Id.* In *Summers*, plaintiffs argued that a timber sale planned for the Sequoia National Forest violated the Appeals Reform Act. *Id.* at 491. The trial court issued a preliminary injunction and the parties later settled the issue of the sale. *Id.* However, the case continued to address plaintiff's facial challenge to the regulations. *Id.* Because the timber sale was "not at issue" any longer, the Supreme Court found that plaintiffs "identified no other application of the invalidated regulations that threatens

11

imminent and concrete harm to the interests of their members." *Id.* at 494-95. In the instant case, however, the Decision Notice authorizing the Hume Hazard Tree Project <u>is</u> still at issue. Therefore, Plaintiff has standing to challenge the Monument Management Plan unless it lacks standing to challenge the Decision Notice.

As an organization, Sequoia ForestKeeper "may assert standing on behalf of [its] members as long as the 'members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Wash. Envtl. Council v. Bellon*, 732 F.3d 1131, 1139 (9th Cir. 2013) (quoting *Laidlaw*, 528 U.S. at 181). The organizational member "must show that (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Laidlaw*, 528 U.S. at 180–81.

When a plaintiff has standing at the outset of litigation, a defendant's voluntary cessation of challenged activities does not undermine this fact unless the Court finds that it is absolutely clear that the behavior will not recur. *Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007) ("Voluntary cessation does not moot a case or controversy unless subsequent events make it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur."). As discussed in Section (V)(A)(2), *supra*, Defendants have not met this heavy burden.

Environmental plaintiffs adequately allege injury in fact when they aver that they use the affected area and are persons "for whom the aesthetic and recreational values of the area will be lessened" by the challenged activity. *Laidlaw*, 528 U.S. at 183. Injuries asserted by standing witness Ara Marderosian fall into this category. Doc. 28-1 at ¶ 19. ("Logging projects have historically caused a disruption of my recreational activities  . . .because the forest is no longer reflective of the natural forest characteristics."). Marderosian states that he has visited the Project Area many times and expects to

12

continue to visit the area "for the rest of my life to enjoy the area and to insure that this old-growth forest area and its habitat for rare wildlife are cared for properly." *Id.* at ¶ 15. He claims that the decision to sell and remove trees from the Project "would permanently harm my ability to observe wildlife in the area." *Id.* at ¶ 19. This harm became imminent when the Forest Service denied Plaintiff's appeal of the Decision Notice on January 8, 2014. *Cent. Delta Water Agency v. United States*, 306 F.3d 938, 947 (9th Cir. 2002) ("[T]hreatened injury constitutes injury in fact."). Despite Defendants' voluntary cessation of timber sales in the project area under this Decision Notice, it is not "absolutely clear," that such a plan will not be revived. The other two elements of standing are clearly met. Defendants are responsible for approving the Decision Notice, which threatens to cause Plaintiff harm. Finally, the harms associated with the threatened sale can be redressed by enjoining the implementation of Alternative D and/or remanding the decision approving it back to the Forest Service.

In its petition challenging the Forest Service's management decisions, Sequoia ForestKeeper plainly seeks to promote its organizational purpose "to protect and restore the ecosystems of the Southern Sierra Nevada." Compl. ¶ 15. Such a claim for relief does not "require[ ] individualized proof," and is "thus properly resolved in a group context." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 344 (1977).

For all of the reasons discussed above, this Court finds that Plaintiff has standing to challenge the Monument Management Plan.

### 2.   Whether the Monument Management Plan is Ripe for Review

Defendants argue that the Monument Management Plan is not ripe for review if Plaintiff's first two claims are moot. Defs.' Mem. at 12. However, the Court finds that Plaintiff's first two claims are not moot. The Court is able to evaluate the Monument Plan as applied to the remaining portions of the Hume Hazard Tree Project. Therefore, this Court DENIES Defendants' Motion to Dismiss Plaintiff's Third Claim for Relief.

### C.   Motion to Strike

Defendants asked the Court to strike certain text from declarations filed in support of Plaintiff's Opposition to Defendants' Motion to Dismiss on the basis that the information contained in the text is not relevant to the jurisdictional issues now before the Court. Doc. No. 33 at 1-2. Because the Court did not rely on the contested information when coming to its decision regarding Defendant's Motion to Dismiss, this issue is now moot. Consequently, Defendants' Motion to Strike is DENIED AS MOOT.

## V. CONCLUSION AND ORDER

For the reasons discussed, above the Court DENIES Defendants' Motion to Dismiss and Motion to Strike.

IT IS SO ORDERED.

Dated:   __August 22, 2014__          ____/s/ Lawrence J. O'Neill___
                                       UNITED STATES DISTRICT JUDGE

14