UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEQUOIA FORESTKEEPER<br><br>Plaintiff,<br><br>v.<br><br>TERESA BENSON, *et al.*,<br><br>Defendants. | 1:14-cv-00341 LJO SKO<br><br>MEMORANDUM DECISION AND ORDER RE PLAINTIFF'S MOTION TO ADMIT EXTRA RECORD EVIDENCE (Doc. 48) |

## I. INTRODUCTION

Plaintiff Sequoia ForestKeeper ("ForestKeeper") challenges the United States Forest Service's ("Forest Service") Decision Notice and Finding of No Significant Impact ("Decision Notice") for the Hume Roadside and Recreation Site Hazard Tree Project ("Hume Hazard Tree Project" or "Project") in the Giant Sequoia National Monument ("the Monument") under the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321 et seq., and the National Forest Management Act ("NFMA"), 1600 U.S.C. §§ 1600 et seq and the Administrative Procedure Act ("APA"), 5 U.S. C. § 706(2).

## II. PROCEDURAL HISTORY

Plaintiff filed a complaint March 7, 2014 and on March 16 moved for a preliminary injunction ("PI") halting the sale and removal of trees under the authority of the Hume Hazard Tree Project. Doc. No. 10-1. This decision was based on the adoption of "Alternative D" in the Project's Environmental Assessment ("EA"). The Forest Service received no bids for the proposed timber sale. Doc. No. 17. On April 3, 2014, Plaintiff withdrew its PI subject to a stipulation in which parties agreed that the USFS could use its own contractors and employees to fell hazard trees, but would not sell the trees or remove

1

them from the Project Area unless this case is resolved in the Forest Service's favor. *Id.* at ¶ 2.

On June 4, 2014, Defendant Forest Service District Ranger Teresa Benson issued a decision to withdraw authorization of the decision to sell and remove trees from the Project Area by striking the sentence authorizing this sale from the Decision Notice. Doc. No. 23-2 ("Withdrawal Notice"). In an accompanying document, Benson explained that it was not economically feasible to use a timber sale for the removal of trees the Forest Service felled pursuant to its stipulation. Doc. No. 23-3 ("Withdrawal Memo"). Because the Forest Service had considered this situation under Alternative C in the EA, Benson concluded that she did not need to supplement or revise the EA to accommodate the change in position. *Id.* Neither document altered the Forest Service's approval of Alternative D as the preferred alternative. Rather, the Withdrawal Memo stated that the "analysis and conclusions in the original Environmental Assessment are still valid." *Id.*

On June 9, 2014, Defendants moved to dismiss the case pursuant to Federal Rule of Civil Procedure 12(b)(1) on the basis that Benson's withdrawal of the approval to sell and remove trees from the project area mooted Plaintiff's claims. Defs.' Mem. at 1. This Court denied Defendants' Motion to Dismiss on the basis that the Forest Service's voluntary cessation of the timber sale did not moot ForestKeeper's claims and that the EA is a "continuing and brooding presence that looms over Plaintiff's interests." Doc. 37 at 8-11. The Court also held that ForestKeeper had standing to challenge the Monument Management Plan. *Id.* at 13.

Subsequently, a scheduling order was issued based on the parties' agreement to lodging records and dispositive motions. Doc. 43. Plaintiff timely filed its motion for summary judgment ("MSJ"), Doc. 47, and motion to admit extra-record evidence ("MXRE"), Doc. 48, on January 30, 2015. Plaintiff seeks to admit two declarations which contain the results of scientific analyses Plaintiff alleges the Forest Service should have considered prior to making its decisions. MXRE at 1.

Defendants' deadline to respond to both documents was initially March 13, 2015, but the parties agreed to move up the deadline for Defendants' response so that the Court could rule before Defendants'

2

response to Plaintiff's MSJ and their cross-motion for summary judgment are due. See M.O. 49 & 52. Defendant filed its opposition to the MXRE to February 25, 2015. Defs.' Opposition to Pl.'s Mot. to Admit Extra-Record Evidence ("Opposition"), Doc. 50. Plaintiff replied March 1, 2015. Reply in Supp. of Pl.'s Mot. to Admit Extra-Record Evidence ("Reply"), Doc. 51.

### III. STANDARD OF DECISION

"In general, a court reviewing agency action under the APA must limit its review to the administrative record." *San Luis & Delta-Mendota Water Auth. v. Locke*, No. 12-15144, 2014 WL 7240003, at *9 (9th Cir. Dec. 22, 2014). The purpose of this rule is to ensure that the reviewing court affords the agency sufficient deference. *Id*. Under the APA, an agency has substantial discretion "to rely on the reasonable opinions of its own qualified experts even if, as an original matter, a court might find contrary views more persuasive." *Marsh v. Or. Natural Res. Council*, 490 U.S. 360, 378 (1989). The concern with a reviewing court considering evidence that was not before agency is that "it inevitably leads the reviewing court to substitute its judgment for that of the agency." *Locke*, 2014 WL 7240003, at *9 (quoting *Asarco, Inc. v. E.P.A.*, 616 F.2d 1153, 1160 (9th Cir.1980)). A reviewing court may not perform a de novo review of the agency's action and must "limit[ ] itself to the deferential procedural review that the APA's arbitrary or capricious standard permits." *Id*.

There are four "narrow exceptions" to the general rule precluding courts from considering extra-record evidence:

> (1) if admission is necessary to determine "whether the agency has considered all relevant factors and has explained its decision,"
> (2) if "the agency has relied on documents not in the record,"
> (3) "when supplementing the record is necessary to explain technical terms or complex subject matter," or
> (4) "when plaintiffs make a showing of agency bad faith."

*Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005) (internal quotations omitted).[1] "These

---

[1] This Court is not persuaded that a fifth exception exists in NEPA cases where the agency "swept stubborn problems under the rug." MXRE at 4 (quoting *Nat'l Audubon Soc. v. U.S. Forest Serv.*, 46 F.3d 1437, 1447 (9th Cir. 1993)). This framework

3

exceptions are to be narrowly construed, and the party seeking to admit extra-record evidence initially bears the burden of demonstrating that a relevant exception applies." *Locke*, 2014 WL 7240003, at *9.

## IV. ANALYSIS

Plaintiff argues that its extra-record evidence should be admitted under the "relevant factors" exception. MXRE at 4. This exception allows a reviewing court to look outside the administrative record "for the limited purposes of ascertaining whether the agency considered all the relevant factors or fully explicated its course of conduct or grounds of decision." *Asarco*, 616 F.2d at 1160. A court may not look outside the record if it contains "adequate information to respond to the allegations." *Animal Def. Council v. Hodel*, 840 F.2d 1432, 1437 (9th Cir. 1988) amended, 867 F.2d 1244 (9th Cir. 1989). The party advocating for inclusion of extra-record evidence must show that this evidence is necessary for a court to evaluate an agency's decision. *Id.*

Plaintiff argues that Defendants' failure to explain how it will decide what portion of the downed wood material to retain under Alternative D violates NEPA. Complaint ¶ 7. Plaintiff argues that Monument Plan standards require maintenance 10-20 tons/acre of downed wood material, but that Forest Service failed to conduct an analysis of how the Hume Hazard Tree Project would affect these levels. MXRE at 1-2. Plaintiff hired an expert to conduct this analysis and seeks to admit declarations documenting his findings. *Id.* at 2. Defendants argue that the Forest Service *did* consider the impact of the Project on the downed wood material levels, and that the extra-record evidence impermissibly "challenge[s] the conclusions and methodologies of federal agency experts on technical issues." Opposition at 6-7.

The EA describes that the Forest Service conducted an inventory of downed wood material in the spring and summer of 2012. Hume0222. Based on this inventory, the Forest Service concluded that there

---

may guide analysis of the four factors discussed above, but does not actually present an additional basis for admitting extra-record evidence. In fact, a close reading of the relevant holding in *National Audubon* reveals that the court evaluated whether evidence should be admitted under what the court now recognizes as the relevant factors exception. 46 F.3d at 1448 (" . . because the Audubon Society alleged the Forest Service neglected to mention a serious environmental consequence in preparing the environmental assessments . . . we hold the district court properly considered [the extra-record evidence].").

was an average of 7.68 tons of downed wood material per acre in the Project Area, which was "low" and "just under the minimum standard for wildlife habitat of 10-20 tons per acre." Hume0223. The EA also notes that trees felled in developed recreation areas under Alternatives C & D would need to be moved and could possibly be used to in areas with low levels of downed wood. Hume0224. However, "Alternative D would allow the rest of the trees not needed to meet dead and down standards to be removed as logs or firewood." *Id*. Defendants also point to a Silviculture Report the Forest Service prepared. Opposition at 6. This report estimates that "1 MMBF [million board feet of wood] total along the roadways would be felled and removed as a commercial product." Hume0605. In addition, "[a] portion of the downed trees would be left on site to ensure the dead and down woody material requirements for wildlife and soil quality are maintained." *Id*.

An agency's decision may be arbitrary and capricious if it "entirely failed to consider an important aspect of the problem." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, (1983). While a court "must not substitute its own judgment for that of the Agency," it is required to "engage in a substantial inquiry" of the agency's action. *Nat'l Audubon*, 46 F.3d at 1447. Here, Plaintiff argues that the Forest Service has failed to consider how it will comply with downed wood standards under its implementation of Alternative D. Complaint ¶¶ 84-85. The agency record shows that the level of wood on the ground is less than the recommended standard (at least as of the 2012 data). However, the agency also decided that it could sell wood that would otherwise be left on the ground and still meet its standards. Whether the Forest Service adequately considered how this will be accomplished is an important factor that this Court must consider in its evaluation as to whether the agency's decision to sell the wood is rational. The agency argues that the conclusions provided in the EA and Silviculture Report, excerpted above, are proof that it considered the relevant environmental impacts. This argument is circular because the reports do not defend or even explain how these conclusions were reached. Rather, it simply assumes that because a conclusion was reached it must have been based on a valid analysis. Plaintiff counters that its extra-record evidence is necessary to show that

there is a proper way to predict how the implementation of Alternative D will affect levels of downed wood material; and that the agency's failure to consider such a method was arbitrary or capricious. Reply at 4. The Forest Service fails to refute this assertion because it did not show that the record is adequate to respond to Plaintiff's allegations. Therefore, this Court cannot adequately discharge its duty to engage in a "substantial inquiry" without evaluating ForestKeeper's information. For this reason, the Court GRANTS Plaintiff's Motion to Admit Extra-Record Evidence. This evidence will be used for the limited purpose of helping this Court to evaluate whether the Forest Service sufficiently considered how the adoption of Alternative D would affect levels of downed wood in the Project Area. Because Plaintiff has shown that its evidence discusses a relevant factor in the record, the Court need not address whether the evidence should be admitted under the technical expertise exception as well.

## V. CONCLUSION AND ORDER

For the reasons discussed above, the Court GRANTS Plaintiff's Motion to Admit Extra-Record Evidence, Doc. 48.

**SO ORDERED**
**Dated: March 5, 2015**

                                            **/s/ Lawrence J. O'Neill**
                                            **United States District Judge**